M. R. BURTON AND CECIL RHYNE, *Plaintiffs in Error*, v.
R. E. L. McCASKILL, *Defendant in Error*.

## Opinion Filed February 27, 1920.

1. Notice of dishonor for non-payment of a promissory note
   may be in writing, or merely oral, and may be given in
   any terms which sufficiently identify the instrument and
   indicate that it has been dishonored for non-payment.

2. Notice of dishonor may be waived, either before the time
   of giving notice has arrived, or after the omission to give
   due notice, and the waiver may be express or implied.

3. Where the president and general manager of a corporation
   indorse the note of the corporation before its acceptance,
   and the note is afterwards transferred by indorsemnt to
   a bank, and the indorsers before and after the maturity of
   the note, discuss with the bank the matter of further ex-
   tension of time and indulgence for the payment of the
   note upon its maturity, and after the note has become due,
   these endorsers solicit the bank, the holder and owner of the
   note, to accept a new note payable to the original payee in
   the note past due for the amount of the principal and
   interest on said past due note and secure such consent
   and cause the new note to be actually drawn and they in-
   dorse it, such acts constitute an implied waiver of notice
   of dishonor for non-payment.

4. Where the indorsers of a note of a corporation, which note
   had been negotiated by indorsement to a bank after the note
   became due and was not paid, make arrangements with the
   bank for indulgence and extension of time of payment of
   the note by the giving of a new note to the original payee
   to include the principal and interest of the old note, and
   and write to the payee and advise him of such arrangements
   that they had made, and urge the payee to agree to such
   agreement, and to indorse the new note to the holder of the
   original note, such acts constitute a waiver of notice of dis-
   honor for non-payment of the note.

5. If after all the evidence of all the parties shall have been submitted it be apparent to the Judge of the Circuit Court that no sufficient evidence has been submitted upon which the jury could legally find a verdict for one party, the judge may direct a verdict for the opposite party.

6. In an action against the indorsers of a promissory note of a corporation, a plea that the indorsement was for the accommodation of the payee, and the indorsers received nothing of value therefor, must fail, when the evidence shows that before the acceptance of the note, and in order to make it negotiable, the note was indorsed.

A Writ of Error to the Circuit Court for Jackson County; C. L. Wilson, Judge.

Judgment affirmed.

*Paul Carter,* for Plaintiffs in Error;

*James H. Finch,* for Defendant in Error.

BULLOCK, Circuit Judge—The defendant in error, hereinafter referred to as the plaintiff, sued M. R. Burton and Cecil Rhyne, the plaintiffs in error, and hereinafter referred to as the defendants, as endorsers of a promissory note of date September 3rd, 1913, signed "Marianna Mfg. Co. seal, by M. R. Burton, Prest, seal," and payable to "R. E. L. McCaskill, or other," and endorsed "R. E. L. McCaskill, Cecil Rhyne, M. R. Burton" and payable at "First National Bank, Marianna, Florida," said note so executed is attached to the declaration and asked to be taken and considered as a part thereof. The declaration alleged that the maker of the note failed and refused to pay the same and that the defendants at the maturity of said obligation were duly notified of the dishonor of the said

note by the said Marianna Manufacturing Company, by reason whereof the defendants became liable and have promised to pay the same, but have not.

To this declaration the defendants filed two pleas: first, that the defendants endorsed the note sued on for the accommodation of the plaintiff and received nothing of value for said endorsement; and, second, that the note sued upon was at maturity dishonored for non-payment and the owner did not give the defendants, or either of them, notice of dishonor on the day the said note was dishonored, or upon the following day thereafter.

Plaintiff replied to the second plea: First, that the defendants after the maturity of the note and after the alleged failure to give notice waived notice of dishonor; second, that the note was presented for payment to the defendant, Burton, and no notice of dishonor was therefore required to be given the said M. R. Burton.

On the same day the plaintiff filed a traverse of the pleas, to-wit: For a traverse of the first plea plaintiff denies that the defendant indorsed for the plaintiff's accommodation and received nothing of value.

2nd. For a traverse of the second plea, denies that the owner or holder of the note failed to give defendants notice of its dishonor for non-payment, upon the day it was dishonored, or upon the following day thereafter.

Defendants joined issue on the replication.

At the conclusion of all the testimony or evidence, the court directed a verdict for the plaintiff.

There was a motion for a new trial which was overruled and to which ruling exception was taken.

The whole testimony considered there is but little conflict.

We will turn to the testimony in order to determine

if the first plea has been sustained, that the note was indorsed for the accommodation of the plaintiff.

Without contradiction the evidence shows that the plaintiff shipped a car load of lumber to the Marianna Manufacturing Company, a corporation, of which the defendant, M. R. Burton, was the president and Cecil Rhyne was the general manager, and for which lumber this note was given.

The only conflict in the testimony, if this can be considered as conflicting, is whether the note was indorsed when it was first sent to the plaintiff, or was it sent and he refused and sent it back for indorsement in order to negotiate it and get money on it. In view of the conclusions reached this is immaterial. Plaintiff testified that he felt confident the note was indorsed when he first received it, and in this connection he said, "If they sent it that way (that is without endorsement), I sent it back for indorsement of the officers and stockholders of the company. That is why their endorsement is on it." Mr. Burton testified, on this point, saying: "At the time it was given to Mr. McCaskill I had not then indorsed it. I indorsed it some time after it was executed and delivered to Mr. McCaskill. Mr. McCaskill accepted the note without my indorsement on it. I indorsed the note so that Mr. McCaskill could discount it at the bank and get his money. I indorsed the note for the accommodation of Mr. McCaskill."

Mr. Cecil Rhyne testified that his recollection is that he indorsed the note a few days, perhaps a week, after the date of the note. He says, "As I understood it, I indorsed it so Mr. McCaskill could handle it through the bank and get his money out of it. I took it that it was for his accommodation."

The testimony is overwhelmingly abundant to show

that the note was indorsed in order to make it marketable, and it is immaterial whether it was indorsed before it was first sent to the plaintiff, or whether he sent it back for indorsement; he had not accepted, if it was sent back for indorsement, and these defendants endorsed. In fact, Mr. Burton conducted the whole transaction, he saw the bank and made all arrangements as to the note, and did all the correspondence with the plaintiff.

The evidence shows that this defense, set up by the first plea has utterly failed.

The second plea sets up the defense that the note was dishonored for non-payment and the defendants were not notified. The replication to this plea, and upon which issue was joined, is, that after the maturity of the note and after the alleged failure to give notice, the defendants waived notice of dishonor.

There was also filed what is called a "traverse of the pleas of the defendants," which amounts to a joinder of issue.

The replication to the second plea, which plea was that the note was dishonored for non-payment and no notice of dishonor given to the defendants.

Section 3087 of the General Statutes of Florida, 1906, as to the notice of dishonor and how it may be given, provides that such notice may be in writing, or oral, and may be given in any terms which sufficiently identify the instrument and indicate that it has been dishonored for non-payment and may be sent through the mails.

Section 3036, General Statutes of Florida, 1906, is as follows: "NOTICE OF DISHONOR WAIVED—Notice of dishonor may be waived either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied." * * *

12—Vol. 79

The evidence in this case shows that the plaintiff lived at DeFuniak Springs, Florida, and the defendant corporation, maker of the note, and the indorsers lived at Marianna, Florida, where the corporation did its milling business.

Mr. F. M. Golson, a witness for the plaintiff, testified that at the time of the making of the note and its maturity, he was the cashier of the bank that discounted the note. He said: "I notified Mr. Burton and Mr. Rhyne that the note was due. I notified them before and after the note was due. Subsequently Mr. Burton and Mr. Rhyne came to me, as cashier of the bank, and made arrangements for carrying the indebtedness. There were arrangements made to renew the paper and for us to carry it on. I think Mr. Burton made the arrangements. He asked me or the bank to carry the paper and the bank consented to carry the paper." In order to get the bank to carry this debt defendant arranged with the bank and had prepared a renewal note, which note was also offered in evidence. In relation to this new note Mr. Golson said: "It is drawn by me as cashier,  *   *   *   as a renewal of the note sued on and to be given in lieu of the note sued on, and for the purpose of extending time of the payment of the note sued on. The note I hold in my hand was delivered by Mr. Burton. At that time it contained the endorsements which appear on the back of it. Those endorsements are in the handwriting of M. R. Burton and Cecil Rhyne." Further on he said: "I could not say, really, how many times I discussed the matter with Mr. Burton about the note maturing.  *   *   * I called his attention personally and orally that the note was over due. Mr. Burton never claimed that he had been released from the note. Never made any claim like that when he was trying to get this note extended."

This note spoken of in the testimony as the "new note" bears date Jan'y 25th, 1915, in the sum of $460.31, which was given to take up the note sued on, with the accrued interest, or such was the effort on the part of these defendants. And about this note Mr. Burton said: "I have the new note here. This new note was endorsed by myself and Mr. Rhyne. We tried to give this new note for $460.30 for the note sued on." The defendant, Rhyne, testified as to this new note. "I endorsed this note also." "It was for the purpose of getting the bank to extend the note, to take up and extend the note. I do not remember any condition attached to my endorsement."

Mr. M. R. Burton wrote to the plaintiff, long after the note sued on was past due and after extensions of the note had been made, in which he said: "I think one more extension of this matter, under a new note, is all that will be necessary." This he wrote January 1st, 1915. Again, on January 25th, 1915, M. R. Burton wrote: "I have been around to see the bank and they advise me that they will acept a renewal of this note bearing the same endorsements, and unless this renewal is made immediately, they are going to ask the endorsers to pay the same."

We have seen that the note sued on bears date Sept. 3rd, 1913, and is due on or before sixty days, and that it was endorsed by these defendants before delivery and acceptance by the payee, and by him discounted at the bank, and when it was not finally paid, he took it up and paid it, and brought suit on it.

Where a corporation executes its promissory note, by its president, and before the delivery of the note, the same person who was president and another person who was the general manager of the corporation, endorse the note and the same is sent to the payee and by him endorsed

to a bank and the money received on the note by the payee, and upon the maturity of the note the same was not paid, the endorsers procure the holder of the note to consent to an extension of time of the payment thereof, upon the renewal of the note by giving a new note, including the accrued interest, and actually cause the said not to be drawn, payable and endorsed as the first note was, and they endorse the new note and leave it with the bank, the holder of the note past due, and write the original payee of the note advising him that such an arrangement for an extension of the payment of the note has been made by them with the bank, and urging him to also endorse and send the new note to the bank, are such acts as constitute a waiver of notice of dishonor of the payment of the original note. It would seem useless to cite other and more testimony in this case to show that the notice of dishonor, for want of payment, of this note, had been impliedly waived by these defendants.

There are three assignments of error. The first assignment calls in question the ruling of the court in admitting in evidence, over objections of the defendants, two letters by "M. R. Burton" to the plaintiff, bearing date December 5th, 1914, and January 17th, 1915, and singed "M. R. Burton, President."

The testimony in this case shows that Mr. Burton as the president of the corporation executed the note sued on in behalf of the corporation, and that in order to give it credit he endorsed it before it was delivered. He conducted all the correspondence relative to the matter, made all the arrangements with the bank as to the extension of the note, and got indulgence from time to time. In all of this correspondence he used the same stationery of the corporation, and in some of the letters simply signed his name without adding the word "President,"

and writing about the same subject-matter. In both of the letters introduced in evidence about which complaint is made, he employed the use of the pronoun "I." He was not pretending to act for and on behalf of the corporation in these matters, or at least he was acting as much for himself as for the corporation. If there was any error at all in the introduction of these letters, it most certainly was harmless error, and should not prevail.

The second assignment is because the court directed a verdict for the plaintiff.

Chapter 6220, Acts of 1911, amending Section 1496 of the General Statutes of Florida—"If after all the evidence of all parties shall have been submitted, it be apparent to the judge of the Circuit Court * * * that no sufficient evidence has been submitted upon which the jury could legally find a verdict for one party, the judge may direct a verdict for the opposite party."

There cannot be the least doubt that no sufficient evidence had been submitted upon which the jury could legally find a verdict for the defendant. The judge was amply justified to direct a verdict for the plaintiff.

The third assignment of error is the action of the court in denying the motion for a new trial.

We have heretofore sufficiently referred to the evidence to show that no other verdict could have been legally rendered, and as a consequence it follows there was no error in the denying of the motion for a new trial.

The judgment should be affirmed.

PER CURIAM.—The record in this cause having been considered by this Court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the

Court as its opinion, it is considered, ordered and adjudged by the Court that the judgment herein be and the same is hereby affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.